### SPINKS *v.* ATHENS SAVINGS BANK.

Although this was the third consecutive verdict for the plaintiff, there being no evidence to sustain it, the trial judge did not err in granting a new trial.

Argued June 10, — Decided July 24, 1899.

Equitable petition. Before Judge Hutchins. Clarke superior court. December 21, 1898.

*H. C. Tuck* and *Lumpkin & Burnett*, for plaintiff.
*Thomas S. Mell*, for defendant.

SIMMONS, C. J. This was a suit to enforce the specific performance of a contract which the plaintiff in his petition alleged he had made with the defendant, the Athens Savings Bank, through its agents. The right to compel such perform-

ance turned, in the present case, upon the determination of the question as to whether Russell or Russell & Hughes, the attorneys for the bank, were its agents and authorized to make the contract for the sale of the land to the plaintiff, and whether the bank ever ratified that contract. The plaintiff claimed that Russell & Hughes were the agents of the bank, and as such agents had authority to sell him the land described in his petition. From the record it appears that one Moss borrowed money from the bank and made to it a deed to secure the same. The bank gave Moss a bond for titles, obligating the bank to reconvey the land upon the payment of the loan. It further appears that Moss was indebted to Russell & Hughes for fees which they had earned by representing him in litigation he had had with other parties. To secure these fees he transferred to Russell the bond for titles given him by the bank. Russell was at that time the general attorney of the bank in advising its officers upon legal questions and in collecting money due the bank. Moss failed to pay the notes he had given for the borrowed money, and they were placed for collection in the hands of Russell. The latter, ascertaining that Moss was unable to pay the notes, advised him to sell one half of the land and by that means secure the money with which to repay the bank. Moss accepted the advice, and Russell agreed to sell one half the land to Spinks, the present plaintiff, for $450. Spinks paid to the firm of Russell & Hughes all of the purchase-price except $145, which amount he tendered to the bank before he filed his petition for specific performance. There is some evidence by Hughes that he had a settlement with the cashier of the bank as to the amount of money received by the firm from Spinks, that the bank owed Russell fees, and that the cashier agreed that Russell might retain the money collected as a part of those fees; but the books of the bank show no settlement of this kind, nor that any credit was given to Moss or to Spinks or to Russell & Hughes for any amounts collected by the latter upon this contract of sale. Moreover, it does not appear that the cashier had any authority to make any such settlement or to bind the bank thereby. If such a transaction in fact took place, the effect of it was a ratification by the cashier of the

sale to Spinks, and he could not do this.   There was also some evidence that the cashier and one of the directors knew that Russell & Hughes had sold to Spinks a portion of the land held by the bank to secure Moss's indebtedness to it.   The cashier being dead, his testimony of course could not be had, but the director denied that he had any knowledge of the sale to Spinks until the latter made the tender and demanded title. The president and the other directors testified to the same effect, and that when knowledge of the sale was brought home to them at a meeting of the board of directors, held subsequently to the time of the tender by Spinks, they refused to ratify the sale.   All the officers of the bank testified positively that neither Russell nor Russell & Hughes had any authority whatever to make the sale of the land to Spinks or to make any agreement in regard thereto for the bank.   Russell testified that neither he nor his firm had any power or authority to make the sale for the bank; that he made the contract with Spinks for the purpose of collecting a fee due him from Moss; and that his intention was, when Spinks had paid for the land, to then inform the directors of what he had done and induce them to receive the money which Spinks had paid and to make title to Spinks.   He further testified that he did not know until this litigation commenced that Spinks had ever paid any money on the land except that paid when the trade was first closed.   From this testimony it seems that the money which Spinks paid was received by Hughes, and several of the receipts are signed by Hughes, or by the firm name "pr. H."

This is, in brief, the evidence disclosed by the record.   As this is the third verdict for the plaintiff which has been set aside by the trial judge, we have closely scanned the evidence in order to ascertain if there was any evidence at all on which the jury could properly predicate a verdict for the plaintiff.   We have failed to discover the slightest evidence which would authorize such a verdict.   On the contrary, the testimony is overwhelming and uncontradicted that neither Russell nor Hughes nor Russell & Hughes had any authority to sell to Spinks the land held by the bank as security for the debt of Moss.   Nor is there any sufficient evidence to authorize a finding that the

bank ever ratified the sale to Spinks. The fact that Russell or Russell & Hughes were the attorneys for the bank did not authorize them to make the sale. Their duties, as shown by the evidence, were as general advisers of the bank's officers, and to collect overdue notes and claims. Nor would the fact that one of the directors learned that the sale had been made bind the bank. One director can not ratify an act of an agent or of an attorney, so as to bind the corporation, when the agent or attorney has exceeded his authority and the director has not been given special authority in such cases. In order to bind the corporation by ratification it would be necessary to have corporate action of some kind. In his argument here, counsel for the plaintiff in error laid considerable stress upon the fact that this was the third verdict for the plaintiff in the court below. While it is true that both the trial courts and this court are loth to set aside third or even second verdicts where there is any evidence whatever to sustain them, neither this court nor a lower court should hesitate to set aside a verdict which has no evidence to support it. When such is the case, the question is not one of evidence or of discretion, but of law. A verdict without evidence to sustain it is contrary to law. A verdict contrary to law has no sacredness or legality, whether it be a first verdict or the last of a dozen consecutive verdicts in favor of the same party. In the present case the verdict, though the third consecutive finding for the plaintiff, was without evidence to support it, and was properly set aside by the trial judge. Indeed the jury should have been directed to find for the defendant.

*Judgment affirmed. All the Justices concurring, except Cobb, J., who was disqualified.*